# KENNEDY v. KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILROAD COMPANY, Appellant.

### Division One, October 11, 1905.

1. **NEGLIGENCE: Province of Jury.** Where there is an irreconcilable conflict between the evidence of a plaintiff and defendant as to whether it was the duty of the plaintiff switchman or of another switchman to throw a switch, or as to whether plaintiff was guilty of contributory negligence in signaling the engineer to catch and tie onto a "kicked" stock car which was about to collide with a stationary car, or as to whether the foreman was guilty of negligence in assuming that the engineer and plaintiff switchman knew, as he had discovered, that it was impossible for his orders to be obeyed without an accident, it is the province of the jury to settle the conflict in the evidence.

2. **CONTRIBUTORY NEGLIGENCE: Question for Jury.** Where there is no room for a court to declare as a matter of law that the plaintiff was guilty of contributory negligence if his theory and testimony are true, and on the other hand, the court should declare that plaintiff was guilty of contributory negligence if defendant's theory and testimony are true, the issue of contributory negligence is a question of fact for the jury, and not one of law for the court.

3. ————: **When Matter of Law.** It is only in a case concerning which reasonable men cannot fairly differ, that the court may declare a plaintiff guilty of contributory negligence as a matter of law.

4. ————: **Change in Status: Implied Notice.** Where the night was dark and rainy and plaintiff had no notice or warning of a car on a switch when the engine on which he was riding passed within eight feet of it, or that it would corner with cars which he was directed to place on another switch on the opposite side, and he was at that time riding on the footboard at the rear of the engine and between it and the car, and a few minutes later, when the attempt was made to "kick" a stock car onto an adjoining switch track, which failed because the switch had not been turned, the car rolled on back on the track where the car was which he had passed, and in order to avoid a collision between it and the kicked car he signaled the engineer to catch the latter and in attempting to couple on to it his hand was mashed, the court will not impute knowledge to plaintiff that the kicked

Kennedy v. Railroad.

car would corner with that on the intervening track, and declare in consequence of that implied notice, that he was guilty of such contributory negligence as barred his recovery.

5. **NEGLIGENCE: Knowledge of Foreman: Failure to Notify Crew.** The foreman of a switching crew gave an order to transfer cars from one switch track to another, and after the engine with the plaintiff switchman riding on the footboard, had started to the switch, the foreman discovered that a car on an intervening track would "corner" with the cars on the other track when "kicked" or pushed back, and instead of notifying plaintiff or the engineer of the danger, he assumed that they knew that the car would so "corner" and that they would back up on the intervening track and push back the cars on that. The night was dark and rainy, and the plaintiff did not know the car would thus "corner," but after a stock car was kicked back plaintiff discovered that the switch to that track had not been thrown but that it was rolling back on the intervening track and would collide with cars on it and injure the stock in the "kicked" car. He, therefore, signaled the engineer to overtake it, and that he would couple to it and stop it, but in attempting to make the coupling he was injured. *Held*, that the foreman, and, in consequence, the defendant, was guilty of negligence, contributing proximately to plaintiff's injury, in not giving warning after he discovered the situation and in assuming that plaintiff knew that situation.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

AFFIRMED

*Mosman & Ryan* and *Warner, Dean, M'Leod & Holden* for appellant.

(1) Plaintiff's own carelessness created the necessity for stopping the car. If plaintiff had been giving proper attention to the work he was engaged in performing, he would not have uncoupled the car from the engine and kicked it down the track until he knew that the track was ready to receive it, and the situation would never have arisen calling on him to decide whether he would chase the car and recouple it to the engine. (2) Plaintiff having complete freedom of choice of methods for doing the work, of his own mo-

tion elected to chase after the car and couple onto it while in motion. (3) The act of chasing after a car and coupling onto it while in motion is very hazardous when the engine and car are both provided with old-fashioned link and pin couplings, or with couplings of the same pattern, and the attempt is made in broad daylight. It is still more dangerous where the engine is provided with a link and pin coupling and the car—as in this case—with a jenney coupling, and the danger is still greater where such attempt is made in the nighttime. (4) It was wholly unnecessary for plaintiff to chase the running car and couple it to the engine. (5) There was not such great likelihood that a collision would injure the stock in the car as to demand that any one should incur such a risk. (6) Plaintiff, an old and experienced switchman, well knew the dangers of chasing a car and coupling onto it in the nighttime, yet he took no precautions whatever, for his own safety. He did not look to see how far off the standing cars were. He did not inform his fellow-servants what the situation was, or what he was going to do. He did not ask them to help, or to watch out for his safety. He gave them no chance to protect him. (7) Plaintiff had passed and repassed by these stationary cars on track No. 4 and knew they were there. (8) Plaintiff went in between the engine and car, in a place where he was hid from sight of his fellow-employees, so they could neither see him nor know what he was doing. (9) Defendant's foreman, Pearch, and switchman, Spencer, knowing that the car would have to be shoved in on track No. 4 before the stock car could be placed on track No. 3, seeing the engine and car coming north on track No. 4 as though it came to shove the cars in, and not knowing that the stock car was uncoupled from the engine, saw no reason, and had no reason for doing anything, except to signal the engineer of the approaching engine to slow up, which they did.

*Walsh & Morrison, John G. Park, Rozzelle, Vine-
yard & Thacher* and *Thomas F. Ryan* for appellant.

(1) It is the duty of the master to exercise ordi-
nary care in commanding his servants, and a failure so
to do is actionable negligence. Moore v. Railroad, 85
Mo. 588; Schroeder v. Railroad, 108 Mo. 322; Russ v.
Railroad, 112 Mo. 45; Dayharsh v. Railroad, 103 Mo.
570; Harriman v. Railroad, 27 Mo. App. 425; Steube
v. Iron Co., 85 Mo. App. 646; Haworth v. Railroad, 68
S. W. 111.   The servant is entitled to presume that
while in the discharge of his duty the master will warn
him of any danger supervening from a change of con-
ditions, brought about by an act of the master after the
servant commenced work, of which the servant had no
knowledge.   Dowling v. Allen, 6 Mo. App. 199, 74 Mo.
13; Michael v. Machine Works, 90 Va. 492; Reisert v.
Williams, 51 Mo. App. 15; Musick v. Dold Pkg. Co., 58
Mo. App. 335; Halloran v. Foundry Co., 133 Mo. 476;
Hysell v. Swift & Co., 78 Mo. App. 44; 20 Am. and Eng.
Ency. Law (2 Ed.), 95, 96.   And if the change of con-
ditions renders the execution of the order impossible,
it is the duty of the master to countermand his order.
Cavagnaro v. Clark, 171 Mass. 359.   (2) The giving of
improper signals, or of proper signals at the wrong
time, or the failure to give signals when required
is actionable negligence.   Foster v. Railroad, 115 Mo.
172; Miller v. Railroad, 109 Mo. 350; Cox v. Granite
Co., 39 Mo. App. 424; Hoke v. Railroad, 88 Mo. 360;
Railroad v. Bowen, 68 S. W. 700; Tibbs v. Railroad, 111
Ala. 449; Railroad v. Crane, 13 Tex. Civ. App. 426; Pur-
cell v. Railroad, 119 N. C. 728; Armstrong v. Railroad,
8 Utah 420; Haworth v. Railroad, 68 S. W. 114.   (3)
The prevailing conditions certainly required the fore-
man to adopt some extra precaution to guard plaintiff
against accidents.   Claybaugh v. Railroad, 56 Mo. App.
635.   (4) Plaintiff was not guilty of contributory neg-

ligence as a matter of law. In view of the proof of the custom to follow cars in this manner, it was a question for the jury, whether plaintiff was or was not guilty of contributory negligence. Cambron v. Railroad, 165 Mo. 543; O'Melia v. Railroad, 115 Mo. 221; Barry v. Railroad, 98 Mo. 69; Reilly v. Railroad, 94 Mo. 608; Pearl v. Railroad, 88 N. W. 1078; Schus v. Powers, etc., Co., 89 N. W. 68. (5) The sudden change in conditions, the unexpected running of the car down track 4, its liability to injure, the strict necessity of keeping that car out of trouble, and the "short limit of time to work in," left no opportunity for plaintiff to pause and ponder over the safest and wisest method of stopping the car. He was confronted with an emergency created by Pearch's neglect to keep the track clear, and give intelligent and consistent commands. Under such circumstances plaintiff could not be expected to select the very best and safest way, and if he acted as a reasonably prudent person would have acted, he was not negligent. Barry v. Railroad, 98 Mo. 70; Adams v. Railroad, 74 Mo. 553; McPeak v. Railroad, 128 Mo. 650; Bischoff v. Railroad, 121 Mo. 225; Kleiber v. Railroad, 107 Mo. 247; Siegrist v. Arnot, 10 Mo. App. 203, 86 Mo. 208; Baker v. Railroad, 147 Mo. 166; Beach on Cont. Neg. (3 Ed.), par. 40; 7 Am. and Eng. Ency. Law (2 Ed.), 399, 400; Fransden v. Railroad, 36 Ia. 375; 20 Am. and Eng. Ency. Law (2 Ed.), 150; T. H. & I. R. Co. v. Fowler, 154 Ind. 682. Plaintiff followed the car in the ordinary performance of duty, to avoid delay and to preserve property from injury. This will relieve his conduct of the charge of contributory negligence. 7 Am. and Eng. Ency. Law (2 Ed.), 396; 20 Id. 151; Schall v. Cole, 107 Pa. St. 8; Wasmer v. Railroad, 80 N. Y. 218; Rexter v. Staerin, 73 N. Y. 601; Kelly v. Railroad, 50 Wis. 381; Liming v. Railroad, 81 Iowa 246; Pullman Co. v. Laack, 143 Ill. 242. The question of whether plaintiff has or has not been guilty of contributory negli-

gence is, where different inferences may be drawn from the evidence, for the jury. Grace v. Railroad, 156 Mo. 301; Hamman v. Coal Co., 156 Mo. 243; Railroad v. Van Steinburg, 17 Mich. 118; Beach on Cont. Neg. (3 Ed.), 451.

MARSHALL, J.—This is an action for $20,000 damages for personal injuries, received by the plaintiff on the 24th of February, 1899, while in the employ of the defendant as switchman in its railroad yards at Kansas City, Missouri, in consequence of an attempt to chase and couple a car loaded with live stock to an engine, in order to prevent said car from colliding with other cars on the track.

The plaintiff recovered a judgment of $7,150, and after proper steps the defendant appealed.

### THE ISSUES.

The petition alleges that the defendant is a domestic railroad corporation; that on the 24th of February, 1899, the plaintiff was in the employ of the defendant as a switchman in its railroad yards at Kansas City, Missouri; that it was plaintiff's duty to couple and uncouple cars, switch them about and make them into trains, and to obey the orders and instructions of his foreman; that it was the duty of the defendant to furnish to plaintiff a reasonably safe place and reasonably safe appliances for doing his work, as also to take proper precautions to prevent injury to plaintiff; that about half past ten o'clock, at night, the plaintiff was working with a switching crew of which Thomas Pearch was the foreman and William McKay, the engineer; that the coupling appliance on the engine was an old-fashioned and antiquated form of coupler, known as the common link-and-pin coupler, and a Jenney coupler on the stock car; that the operation of coupling link-and-pin couplers with automatic couplers is dangerous when

made in the dark; that at the time and place of the accident, the plaintiff, in the course of his duty, was riding on the footboard of said engine, which was moving northwardly on short switch track No. 4 in defendant's yards; that plaintiff was endeavoring to overtake a car loaded with live stock, which was immediately in front of him and moving slowly in the same direction; that plaintiff could see signals from the engine cab, and the engineer, McKay, who was looking out of his cab window, could see beyond the stock car certain other cars standing still, which plaintiff could not see; that plaintiff's foreman, Pearch, stood on the ground beside the stationary cars and knew, or might have known, of their presence, and of the approach of the engine and stock car sufficiently long before the collision to have prevented it, by the exercise of reasonable care; that it was the duty of said McKay to keep a lookout, and on seeing said stationary cars, to stop his engine and avoid collision with them, and it was the duty of the foreman, Pearch, to signal plaintiff and the engineer to stop or slacken speed, or warn them concerning the stationary cars and to prevent the collision, but neither the foreman nor the engineer gave any signal to indicate the danger, and while plaintiff was thus intent in overtaking and coupling to said car, said stock car suddenly crushed into the stationary cars, and plaintiff's right hand, with which he was about to make the coupling between the stock car and the engine, was caught and crushed so that the greater part of it had to be amputated; that, had the engine been equipped with automatic couplers, as was the stock car, plaintiff would not have been obliged to use his hand and the injury would not have occurred.

The petition then assigns the negligence complained of in the following language: "that said injury was occasioned to plaintiff by the negligence, carelessness and want of ordinary prudence on the part of de-

fendant and its agents and servants, in that it provided plaintiff with an insufficient and defective coupling, as above described; plaintiff's foreman failed to warn him. of his danger due to his proximity to the stationary cars and failed to signal plaintiff or the engineer to stop until too late, and the engineer failed to slacken the speed of the engine when he saw or might have seen said cars, or knew, or might have known, of their presence."

The trial court instructed the jury to disregard the first and third acts of negligence complained of, and the plaintiff acquiesced in the ruling; so that the case was submitted to the jury on the alleged negligence of the foreman to warn plaintiff of his danger, and of said foreman's failure to signal plaintiff or the engineer to stop in time to avoid the accident.

The answer admits the incorporation of the defendant and that the plaintiff was a switchman in its employ, and then pleads assumption of risks and contributory negligence. The reply is a general denial.

The case made is this:

The defendant is a domestic railroad corporation and has a switch yard in Kansas City, Missouri. It used two switching crews in said yards, which acted independently of each other, but under the direction of the yardmaster. Plaintiff was a member of one of said crews and was a switchman. The crew consisted of Pearch, the foreman; Spencer, another switchman; McKay, the engineer; and the plaintiff, and presumably a fireman, though that fact does not distinctly appear. Spencer was called "the switchman in the field;" that is, the switchman whose duty it was to do certain switching; the plaintiff was called "the switchman that follows the engine;" that is, it was his duty to stay with the engine for the purpose of coupling and uncoupling it to and from other cars.

For the purposes of this case the following is a sufficient description of the switching yards: There was

a straight track running north and south called "short
four." On the prolongation thereof was a straight
track called the "lead track." To the left of "short
four," there was a track called "short five." To the
right of "short four," there was a track which was
called "short three." The switch from the "lead
track" to "short five" was the most southerly switch.
Seventy-two feet north thereof was located the switch
from the "lead track" to "short three."

The plaintiff and his crew were engaged in mak-
ing up a freight train, and for this purpose, about an
hour and a half before the accident, they had placed
some cars on short four. They then went to some other
place. While they were gone, the other switching crew
placed some more cars on short four, but left the most
southerly car so close to short three that a train could
not pass the same on short three without colliding there-
with, or as it is termed in railroad parlance, "corner-
ing" with them. Neither the plaintiff nor the foreman
nor any member of his crew knew that the other crew
had so placed said cars. The night was dark and rainy.
About half-past ten o'clock the plaintiff's crew returned
to the scene of the accident. The engine was run onto
short five, and there attached to a stock car loaded with
live stock. Their purpose was to move the stock car
from short five and place it on short three. In order
to do so, it was necessary for the engine, which was fac-
ing southwardly—the engineer, therefore, being on the
right-hand side of the engine—to pull the stock car
southwardly on short five down onto the lead track,
beyond the most southerly switch, and then to close the
switch from the lead track to short five, and open the
switch from the lead track to short three, and so run
the car onto short three. There is a sharp and irrecon-
cilable conflict in the testimony as to the exact order
that was given by the foreman to accomplish this pur-
pose. The plaintiff and the engineer testified that the

foreman said to plaintiff, "Go on short five and take that stock car and kick it up on number three—give it a good kick on number three." The foreman and the other switchman testified that the foreman said to the plaintiff, "Come three." The meaning of the two different orders is this: "Come three," means, to take the car off of short five southwardly on to the lead track, keep it coupled to the engine and shove it northwardly on to short three. "Go on short five and take that stock car and kick it up on number three," means, to take the stock car from short five onto the lead track, uncouple it from the engine and kick it or shunt it on to short three, the car progressing by means of the kick and the engine not following it. The undisputed testimony shows that when the plaintiff received the order, he got onto the foot board on the rear of the engine, and signaled to the engineer to go southwardly. When they had thus progressed southwardly on to the lead track below the switch from the lead track to short five, the train stopped, the plaintiff got off, and turned the switch so that the train could go northwardly on the lead track and get onto short three. The plaintiff then signaled to the engineer to kick the stock car. The engineer did so. As the car was passing the plaintiff, who was standing at the switch, he looked northwardly and saw from the target or light that the switch, seventy-two feet northwardly, which would throw the car from the lead track on to short three, had not been turned, and in consequence the car would go northwardly on short four and would collide with the cars that were standing on short four. The plaintiff immediately notified the engineer to chase the stock car for the purpose of coupling to it and stopping it before it would so collide. As the engine passed the switch at which the plaintiff was standing he got on the foot board at the rear of the engine and thus the chase began. The en-

gine was equipped with an old-fashioned link-and-pin coupler. The stock car was equipped with a Jenney' coupler, which is an automatic coupler, and the uncontradicted evidence is that it is a difficult thing to couple an old-fashioned coupler to an automatic coupler, and that it can only be accomplished about one time in ten. when the cars are in motion, or when the engine is chasing a car to effect a coupling. ˉ Standing as he did on the foot board at the rear of the engine, the plaintiff could not see how close the stock car was to the cars standing on short four. The engine was backing and the engineer was watching the plaintiff, because it was necessary for him to receive the signal from the plaintiff when the coupling was effected, or when there was a failure so to do. In order to accomplish the coupling it was necessary for the plaintiff to hold up the link with one hand, insert the link in the opening of the automatic coupler, and then, with the pin held in the other hand, to insert the pin through the link. The plaintiff had no way of holding on to the engine except by his knee, both hands being thus employed.

The uncontradicted evidence shows that when the plaintiff thus took the stock car from short five, the foreman and the other switchman were standing at that point, which was two hundred and eighty-two feet north of the switch between the lead track and short three. While the plaintiff and the engineer were thus engaged in taking the stock car down .onto the lead track, the foreman and the other switchman walked southwardly until they reached the end of the cars that were stationed on short four. They stopped there, leaning against the most southerly end of the train, talking. The foreman and the other switchman testified that they then saw, for the first time, that the stock car and engine could not be run up onto short three without cornering on the cars that stood on short four. They both saw that the engine with the stock car were coming northwardly

on the lead track and onto short four. They say they thought that the plaintiff and the engineer, while drawing the car southwardly on short five, had seen that they could not carry it on to short three because it would corner on the car standing on short four, and that from where they stood they could not see that the engine and car had been uncoupled, but believed that the plaintiff and engineer were coming up on short four for the purpose of shoving the cars standing thereon further northwardly, so as to enable them thereafter to again go south, and then shove or kick the stock car on to short three. They say they thought the plaintiff had seen this condition while moving the stock car from short five, because in so doing the plaintiff and the engineer had passed within eight or ten feet of the car standing on short four. The plaintiff and the engineer, however, testified, that they did not see or observe such condition, and were attempting to carry out the original order of the foreman to put the stock car on to short three. The foreman and the other switchman said they saw that the switch to short three had not been turned, and knew that it ought not to be turned, but that it was necessary to shove the cars on short four further north before attempting to put the stock car on short three. They further said that seeing the car and engine coming, for such purpose as they believed, their only duty was to signal to the engineer to slow up when the stock car came close to the stationary car on short four, and thereby prevent them from coming violently together, and that when the stock car was about a car length away from the stationary cars they did so signal. Standing as he was, the plaintiff, of course, could not see such a signal, and according to his testimony, did not know that the foreman and other switchman were anticipating such a move. The engineer testified that he did not see the slow-up signal, but as his attention was properly fixed upon the plaintiff for the purpose of receiving

the plaintiff's signal as to when the coupling was made
or otherwise, the failure of the engineer to see the sig-
nal is easily understood.

The stock car was traveling from two to three miles
an hour, and of course the engine had to travel at a
greater speed in order to overtake the stock car to en-
able the plaintiff to couple onto it, and the engineer had
to keep the engine well under control so as to stop the
car and engine as soon as the coupling was made and
before the collision occurred.

When the engine was within about two feet of the
stock car, and before it had overtaken it, and while the
plaintiff was standing on the foot board with the link in
one hand and the pin in the other, the stock car collided
with the stationary cars on short four, the stock car
rebounded in consequence of the collision, and the plain-
tiff's right hand was caught between the couplers and
mashed so that the greater part thereof had to be am-
putated.

There is a sharp conflict in the evidence as to whose
duty it was to throw the switch at short three. The
plaintiff's testimony tends to prove that it was the
plaintiff's duty to remain with the engine and to throw
only the switch nearest to the engine, and that it was the
duty of the foreman or the other switchman in the field
to throw all other switches necessary to accomplish the
purpose in view, including the switch for short three.
On the other hand, the defendant's testimony tends
to prove that it was the duty of the plaintiff to throw
all of the switches necessary to accomplish the purpose
intended. The defendant further contends that the
plaintiff could have seen before he gave the order to the
engineer to kick the stock car that the switch to short
three had not been thrown; and, further, that by the
exercise of ordinary care the plaintiff could have seen
the condition of the stationary cars on short four, which
rendered it impossible to move or kick the stock car

onto short three. The defendant's evidence further tends to prove that it is exceedingly dangerous to chase and undertake to couple onto a car, and that this is especially true at night. On the other hand, the plaintiff's evidence tends to prove that it is a matter of almost daily occurrence, not only in the defendant's yards, but in other railroad switching yards; that it occurred at least once every forty-eight hours for many years before the accident in the defendant's yards. The defendant's evidence further tends to prove that when a car has been uncoupled and kicked and it is found that it is going wrong, the proper procedure for the brakeman following the engine is to get up onto the kicked car, apply the brakes and thus stop the car before it collides with any other car, and that the plaintiff could easily have done so in this case, because the ladder for climbing on top of the car was on the west side of the rear of that car, and that the plaintiff was standing on that side of the lead track when the car passed him so closely that he could touch it with his hands. On the other hand, the plaintiff's testimony tends to prove that none of the switchmen in the defendant's yards had ever before attempted to stop a kicked car by getting on top of it and applying the brakes, or at any rate, that during the time he had worked for the defendant, he had never done so, but that it was the practice and custom of all of the switchmen, under such circumstances, to have the engine chase the car and couple to it while in motion. The plaintiff further testified that in this case it would have been impossible to have stopped this car in time to prevent the collision by so climbing on top of it and applying the brakes, and that the rules of the company and the instructions of the foreman required all employees to exercise particular care in handling cars loaded with stock, so as to prevent a collision and thereby prevent throwing the stock off their feet.

At the close of the plaintiff's case, and again at the

close of the whole case, the defendant demurred to the evidence, the court overruled the demurrers, and the defendant excepted, and now assigns such ruling as the chief error in the case, claiming that the case made shows that the plaintiff's own negligence produced the condition which caused his injuries, and that there were two methods presented of correcting the conditions which the plaintiff's negligence produced, one of which was safe and the other highly dangerous, and that the plaintiff selected the dangerous instead of the safe method, and is thereby precluded from recovering.

## I.

The first question presented for adjudication is whether or not the trial court erred in refusing to take the case from the jury.

The negligence charged and upon which the case was tried and submitted to the jury was that the foreman failed to warn the plaintiff of his danger, and to signal to the engineer to stop until too late to prevent the collision and accident.

The case made by the plaintiff was an order to take the stock car from short five and kick it onto short three, which meant that he was to take it off of short five, haul it to the lead track, and then kick it onto short three; that in the performance of this order it was the plaintiff's duty, when he had passed the switch from the lead track to short five, to get off of the engine and throw the switch, so that the train could then go north on the lead track and thence onto short three; that it was the duty of the foreman or the switchman in the field, to throw the switch from the lead track to short three; that the plaintiff knew that cars had been placed on short four, but that they had been so placed an hour and a half before the accident as not to interfere with the kicking of the stock car onto short three, and that he was ignorant of the fact, and under the circum-

stances was not charged with notice of the fact that the other switching crew had put other cars on short four, which would render impossible the accomplishment of the purpose intended; that it was the duty of all of the agents and servants of the defendant to exercise particular care in the handling of cars loaded with stock, especially to prevent them from colliding with other cars and thereby injuring the stock; that plaintiff proceeded to obey the order, uncoupled the stock car from the engine, gave the signal for the engineer to kick the stock car onto short three, threw the switch nearest the engine, and remained standing at the switch until the stock car had been kicked by the engine and was passing the switch, when for the first time, he saw that the switch from the lead track to short three had not been thrown, and that the stock car would continue on the lead track and thence onto short four and there collide with the cars that had been left there; that the practice and custom of the plaintiff and others in the defendant's yards, and in other places where he had worked, under such circumstances, was to have the engine chase the car, to couple the engine to the car and thus stop it; that in view of the short distance the stock car had to go after it had been thus kicked, it would have been impossible for the plaintiff to have climbed the ladder onto the top of the stock car, apply the brakes and stop the car before it would collide with the cars on short four; that acting on the emergency and in the discharge of his duty as he had been instructed therein, and in accordance with the custom and practice that had prevailed in the defendant's yards, and as the only effective means of catching the car and stopping it, he gave the order to the engineer to chase it and couple the engine to it and stop it, but that in consequence of other cars having been placed on short four without the knowledge of the plaintiff, the stock car did not have the distance to travel before the collision that the plaintiff

had supposed was the case, from the fact of the other crew having put other cars on short four, with the result that before the engine could overtake the stock car and the coupling be made, the stock car collided with the other cars that had been put on short four by the other switching crew, and rebounded and caught plaintiff's hand and injured it.

Upon such a showing it cannot be said as a matter of law that the plaintiff was guilty of any negligence in the premises, nor can it be said that the case made did not entitle the plaintiff to go to the jury.

The sum of the position taken by the defendant as to the case made by the plaintiff is, that he saw, or could have seen, that the additional cars placed on short four, cornered on short three and made it impossible for him to carry out the order to transfer the stock car from short five to short three, and necessitated the shoving of the cars on short four to a point further north before attempting to kick or push the stock car onto short three, and the basis of the contention is that in taking the stock car from short five, the plaintiff passed within eight or ten feet of the cars standing at the south end of short four, and saw, or by the exercise of ordinary care, could have seen them in that position.

Under this contention it becomes immaterial whose duty it was to throw the switch to short three, for if it was the duty of the plaintiff to first shove the cars on short four further north before attempting to place the stock car on short three, then it would have been improper to throw the switch to short three, and if it had been done, it would have been impossible to shove the cars further north on short four. The case made by the plaintiff, however, is, that he did not know that additional cars had been placed on short four; that he did not see them so placed thereon in moving the stock car off of short five, and that the night was dark and rainy, and that the position of the cars on short four,

cornering on short three, could not have been ascertained by him by exercising ordinary care, under the circumstances, and that in addition thereto, the foreman was present and knew, or should have known, of the condition, and whether he knew or did not know of the condition, that he afterwards walked to the car thus placed on short four and cornering on short three, and saw the changed conditions, and that it was a part of his duty to warn the plaintiff and the engineer of that fact, and to countermand the original order to kick or push the stock car onto short three, and that instead of so doing he stood at the south end of the cars so placed on short four, talking and laughing with the switchmen in the field, and gave no order, signal or command looking towards the pushing of the cars further north onto short four, or towards preventing a collision of the cars, or towards warning the plaintiff of the change in the status of affairs as they had been left an hour and a half before by his switching crew.

There is no room for doubt that the foreman had ample time after he discovered that the cars on short four cornered on short three, and thereby prevented the carrying out of his original order, to have given a signal or order to the plaintiff and the engineer, changing the original order and directing them to come north on short four and push the cars further north on that track before attempting to carry out the original order. There can be no difference between fair-minded men that when the foreman discovered this change in the state of affairs, it was his duty to change his original order and to give the proper order. Instead of so doing he assumed, when he saw the car and the engine coming north on short four, that the plaintiff and the engineer were coming for that purpose. But under the circumstances of the case he had no right to so assume, because such an assumption was based on the further assumption that plaintiff and the engineer had seen this changed status

of affairs as to the cars on short four, and that assumption was unwarranted under the circumstances, for the engine was headed towards the south, the engineer was on the right hand side of the engine, which was opposite to the side on which the cars standing on short four were, and the plaintiff was riding on the foot board at the rear of the engine, and between it and the stock car, and, therefore, neither was in a position readily to see, especially on a dark night, the changed status of affairs. Common prudence and care, therefore, required the foreman, when he saw the changed status of affairs, on reaching the car standing most southerly on short four, to change his original order and notify the plaintiff and the engineer of the impossibility of carrying out the original order, and to command them not to attempt to go onto short three, but to come north on short four and shove the cars standing thereon further north.

It would have been manifest error for the trial court to have taken the case from the jury upon the plaintiff's showing under such circumstances. It would also have been error for the trial court to have taken the case from the jury at the close of the whole case. For, though the defendant's evidence tended to show that it was the plaintiff's duty to throw the switch to short three, which concededly should not have been done under the circumstances, because it would have resulted in a collision between the stock car and the cars standing on short four, and though the defendant's evidence also tended to show that the proper procedure would have been for the plaintiff to have climbed onto the top of the stock car and apply the brakes and thus stop it, nevertheless, the court could not for this reason take the case from the jury, because it was the province of the jury to decide these questions upon all the evidence submitted in the case, and there was a sharp and irreconcilable conflict between the duty of the plaintiff as defined by the plaintiff's evidence and that duty as defined

by the defendant's evidence. It was, therefore, the province of the jury to determine whether the plaintiff was right and whether he exercised ordinary care, and whether he used the usual and ordinary means to accomplish the purpose in view, or whether he failed in so doing by not pursuing the course that the defendant's testimony tended to show was the proper course to adopt under the circumstances.

These questions, together with the question of contributory negligence of the plaintiff, if there was any such, were questions for the jury and not for the court. The jury found the issues for the plaintiff and thereby the facts are established in this case to be as the plaintiff contended and not as the defendant contended.

There was no error, therefore, in the ruling of the court in submitting the case to the jury.

## II.

It is next contended that the plaintiff was guilty of contributory negligence.

This question has been necessarily discussed in the consideration of the question of the submission of the case to the jury. If the plaintiff's theory and testimony and that of his witnesses is true, then there is no room for a court to declare as a matter of law that the plaintiff was guilty of contributory negligence. On the other hand, if the defendant's theory and the testimony of his witnesses is true, then the plaintiff was clearly guilty of contributory negligence. But as there was such a radical difference between the testimony of the plaintiff and that of the defendant upon this question, it becomes a question of fact for the jury and not a question of law for the court. Under no view of the case could it be claimed that the plaintiff was guilty of contributory negligence, except upon the theory that the plaintiff was charged with notice of the condition of the car on short four by reason of the fact that in moving

the stock car from short five to the lead track he passed within eight or ten feet of it. It is argued that these facts were such that by the exercise of ordinary care the plaintiff could have discovered the changed status of affairs as to the cars on short four. The question is, therefore, whether or not, under the circumstances disclosed in this case, the law will impute such notice to the plaintiff. As hereinbefore pointed out, the plaintiff, at the time he passed the cars standing on short four, was riding on the foot board at the rear of the engine, and between the engine and the stock car; the night was dark and rainy; there had been nothing done of which the plaintiff had notice or warning, between the time the plaintiff's crew had placed the cars on short four in such a condition that they were not cornering on short three, and the time that the plaintiff passed them in taking the stock cars from short five. No case cited by counsel, and none that has fallen under the observation of the court, goes to the extent of holding as a matter of law that notice will be imputed to a servant under the conditions presented here. In nearly all of the cases the courts have wisely left the question of the contributory negligence of the plaintiff to the jury. It is only in cases where reasonable men cannot fairly differ, that the court has declared a plaintiff guilty of contributory negligence as a matter of law. Of course when such a case is presented it is the duty of the court to so declare without regard to the jury, but in cases such as this it would be improper for the court to declare as a matter of law that the plaintiff was cut off from recovery by reason of his contributory negligence, based upon implied notice of the change in the status of affairs, such as occurred in this case, especially when the plaintiff was acting under the direct supervision and order of his superior officer or foreman, and when it was the duty of the foreman to know that his orders could be carried out, or if he found after giving the

order that it could not be successfully executed, to countermand it before injury could result to anyone from the attempt to obey the order.

## III.

The evidence is conflicting as to the duties of the plaintiff and the foreman under the facts proved in this case, but there is no conflict in the evidence that, whether the original order was to kick the car onto short three or to keep it attached to the engine and shove it to short three, the foreman discovered that the original order could not be carried out, because of the cornering of the cars on short four with short three, and had ample time to have countermanded the original order and to have ordered the plaintiff and the engineer to come north on short four and shove the cars standing thereon further north before attempting to place the stock car on short three, and that he wholly failed in his duty in this regard, and that his failure and negligence in this respect was the direct and proximate cause of the injury. The only attempt of the foreman to excuse himself for so failing in duty is that he assumed that the plaintiff and the engineer had discovered the change in the condition or status of affairs after they had started with the stock car south on short five. As hereinbefore pointed out, such an assumption was unwarranted in this case. It is noteworthy that when the switching crew returned to the place and removed the stock car from short five, they had to pass northwardly on short five in order to reach the stock car, and that in so doing they passed as near to the cars stationed on short four as the plaintiff did in removing the stock car from short five. Yet it is conceded that at the time the order was given to remove the stock car from short five, none of them knew that the car on short four was so placed as to prevent a car from being shoved up or kicked up onto short three. The foreman, himself, testified that

he did not discover that condition until after the stock car had been taken off of short five, and he and the switchman in the field had walked southwardly to the end of the stationary cars. It cannot, therefore, be said that if the other members of the switching crew, including the foreman, failed to discover this condition or status of affairs as to short four, in going northwardly on short five to get the stock car, the plaintiff was guilty of contributory negligence in not discovering that condition or status of affairs in taking the stock car southwardly on short five. In other words, the case is not such as would justify the court in imputing notice of the condition or status of affairs to the plaintiff by reason of having gone north on short five, or by reason of having come south on short five. For short three was to the right or east of short four, and short five was to the left or west of short four. In going north or coming south on short five it might or might not have been possible for the plaintiff or the switching crew, on a dark and rainy night, to see that the opposite side of the car, standing on short four, would prevent a car from safely passing out on short three. Yet in order to impute notice to the plaintiff of this condition and to cut off his recovery on this account, it would require the court to find as a matter of law that the plaintiff could see and did see this condition while passing north or coming south on short five. No good purpose will be subserved by digesting or analyzing the testimony of the various witnesses in the case, for the result would be simply a demonstration of the fact that there was a conflict in the evidence upon nearly every point in issue in the case.

Under such circumstances the ends of justice are fully met by stating that such is the result of the evidence without specifying it. Neither will it be profitable to set out and discuss in detail the various instructions given and refused in the case. On behalf of the

plaintiff the court gave three instructions. The first predicated a right of recovery if the jury found the facts to be as stated by the plaintiff and his witnesses. The second instruction simply defined the terms ordinary care and negligence, and the third instruction related to the damages. On behalf of the defendant the court gave five instructions and refused fourteen. The court of its own motion gave one instruction. The instructions given for defendant, in effect, told the jury that the plaintiff was limited to the failure or negligence of the foreman to warn the plaintiff of his danger and to give a proper signal to the engineer to prevent the collision; that the jury could not take into consideration the failure of any other members of the switching crew to throw the switch on short three; that the mere fact that the plaintiff was injured while attempting to couple the engine to the stock car did not entitle him to a verdict, but that in order to recover, it devolved upon the plaintiff to prove that the defendant was guilty of negligence in some of the particulars charged in the petition and defined in the instructions, and that such negligence was the direct and proximate cause of the injury; and that if the jury found the fact to be that the foreman gave a slow up signal to the engineer to stop the car in sufficient time to have prevented the collision, then the plaintiff could not recover. The instruction given by the court of its own motion was a modification of one of the instructions asked by the defendant, which declared it to be the duty of the plaintiff to be watchful and attentive for his own safety, and to take all the usual and necessary precautions to protect himself from injury, and that he would not be justified in attempting to pursue, overtake and couple onto a moving car in order to prevent said car from colliding with other cars, and injuring stock therein, if by so doing, he was subjecting himself to the risk and peril of receiving personal injury. The modification consisted of the court

interpolating the words, ''knew or believed he,'' so that it would read, that he would not be so justified in pursuing the car if he knew or believed he was subjecting himself to risks and perils of receiving personal injury. The statement of the substance of the instructions given at the request of the defendant shows that the case was put to the jury as favorably for the defendant as it was entitled to. In fact, even as modified, the instruction given with respect to the pursuing of the car and coupling of the engine thereto, stated the law with reference to the assumption of risks more favorably to the defendant than the rule in this State authorizes.

Under the testimony adduced by the plaintiff, particularly as to the practice and custom that prevailed in the defendant's yards of chasing cars and coupling to them while in motion, it may fairly be said that in entering, or remaining in, the defendant's service, the plaintiff assumed the risks ordinarily incident to so chasing and coupling cars. But the plaintiff did not assume the risk of the negligence of the defendant, or his *alter ego,* in not countermanding the original order and in not signaling to the plaintiff and engineer after he discovered that it was impossible to execute the original order, by reason of the cars on short four cornering on short three. Under the case made by the plaintiff this was a fact that was known to the foreman and unknown to the plaintiff, and the foreman had ample time to have so acted as to have prevented the injury. His failure so to do was negligence, and the plaintiff did not assume the risk of his negligence, when he entered the service of the defendant or when he attempted to make the coupling in the manner in which his evidence showed it was constantly being made or attempted to be made in the defendant's yards.

This general discussion of the case and the legal principles applicable thereto disposes of all the conten-

tions with reference to the ruling of the court in the refusal of instructions asked by the defendant, for when those instructions are measured by the rules and principles announced, it appears that the instructions were either properly refused or else were inapplicable to the facts in judgment.

Finding no reversible error in the record, the judgment of the circuit court is affirmed.

All concur.