# SUPREME COURT

OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1907.

JAMES T. BRADY v. KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY, Appellant.

#### In Banc, November 6, 1907.

1. **NEGLIGENCE: Lessor: Pleading and Evidence.** Where there is substantial evidence tending to show that defendant owned the land where the injury occurred, and the answer tacitly admits such to be the fact, a petition which alleges plaintiff was employed "in and about said switch yards belonging to defendant herein" and that "in due course of his employment plaintiff was required to go between certain cars belonging to" defendant's lessee, will, after verdict, be held to charge that defendant owned the land.

2. ———: **Assumption of Risks.** The servant does not assume extraordinary risks or such as are occasioned by the carelessness or negligence of the master. If the negligence of the master was the proximate or effective cause of the servant's injury, the master must respond in damages.

3. ———: ———: **Switchman: Uncoupling Cars: Foreman's Duty: Anticipating Switchman's Peril: Matter for Jury.** The switch-crew consisted of the yardmaster, foreman, a switchman (plaintiff) and two others. As cars were being backed, the yardmaster, on the engineer's side, tried to uncouple a car by using

( 509 )

Brady v. Railroad.

the lever attached to the chain which lifted the coupling pin, but it was broken, and he shouted to "cut it on the other side." The foreman answered, "All right; let her come," and ran around the end of the car, crossing to the fireman's side, seized the lever and uncoupled the car, and just then saw the flash of the switchman's lantern, who, at work on the engineer's side, when he saw the yardmaster's failure to cut loose the car, but, though between him and the foreman, did not hear his order to "cut it on the other side," of his own volition went in between the cars, stood on the brake-beam and leaning against the car behind for support, with one hand held to the low-placed hand-hold on the car in front and with the other attempted to draw the pin at the same instant the foreman used the lever on the other side; the cars parted, and the switchman fell, and was injured. The evidence tended to show it was the switchman's duty to cut off and uncouple cars; that it was his custom to work on the engineer's side; that the foreman knew such was the custom, unless there was a special order to cross over and cut off the car on the other side; that he also knew it was the custom of the switchman to go on the brake-beam to raise the coupling pin when the lever failed to work; and by his own testimony he did not know where the switchman was when he ran around to cut the car loose. *Held*, first, that it was the foreman's duty to know where the switchman was and what he was doing at the time he undertook to seize the lever on the fireman's side, and, as he had to reach in between the cars to grasp the lever, which was six or eight inches from the car's corner, he could, had he looked, have seen the switchman standing on the brake-beam with a lighted lantern on his arm; *second*, the switchman had the right to use the customary method of uncoupling the cars when the lever was out of order; and, *third*, whether, under the circumstances, the switchman assumed the risk, or the foreman should have anticipated the manner of the injury, was a question to be passed upon by the jury, and not one of law to be determined by the court.

4. ———: **Choosing Dangerous Way: Verdict for Plaintiff.** Where an instruction is given that "if plaintiff had a choice of two ways for uncoupling cars, one safe and the other unsafe, and he chose the unsafe way, and was injured in consequence, he cannot recover," the only inference to be drawn from a verdict for him is that the jury believed that the way chosen by him was no more dangerous than the other.

5. ———: **Rules: Established Custom to Contrary.** Even if the switchman knew of the company's rule prohibiting switchmen from going in between cars to couple or uncouple them while in

motion, the tacit approval and acquiescence by the company's officials in the established custom of switchmen doing so when the lever failed to work and trains were moving slowly, must be regarded as a recognition on their part of the propriety of his so doing.

6. ———: **Contributory Negligence: Choosing Unsafe Way: Knowledge.** The burden is on defendant to show that plaintiff was guilty of contributory negligence in adopting the method he did to uncouple cars, and, in order to do this, it devolves upon defendant to show, by a preponderance of the evidence, that there were two ways to uncouple them, one safe and the other unsafe, and that plaintiff knowingly chose the unsafe way. And a verdict for plaintiff, where the question is submitted by a proper instruction, is conclusive upon defendant that he did not knowingly take the unsafe way.

7. ———: **Peril: Anticipating Particular Injury.** It is not necessary to plaintiff's recovery that defendant railroad company's agent should have foreseen the particular injury which resulted to him. It is sufficient if the injury, as it occurred, was such as might have been foreseen and avoided by the exercise of reasonable prudence on the agent's part.

8. ———: **Assumed in Instruction.** An instruction told the jury that plaintiff "assumed all the risks ordinarily incident to the work he was called upon to perform, but he did not assume the risks, if there were any such, arising from the negligence of said company or its foreman." *Held*, not to assume that the company or the foreman was negligent. The jury could not have found that there were risks arising from the negligence of the company or foreman without also finding there was such negligence.

9. ———: **Instruction: Declaring What is Proximate Cause.** An instruction which told the jury that "plaintiff's act in going between the cars was the proximate cause of his injury" was properly refused, when that act of plaintiff was one of the vital issues in the case, upon which there was a sharp conflict in the evidence.

10. **EXCESSIVE VERDICT: Power of Court.** While the jury has large discretion as to the amount of damages it may allow in any particular personal injury case, the Supreme Court has the power to pass upon the question of the excessiveness of the verdict.

11. ———: **$15,000.** A verdict for $15,000 for a switchman for the loss of his foot and the lower part of his leg, is *held* to be excessive by $5,000.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

AFFIRMED ON CONDITION.

*Scarritt, Scarritt & Jones* for appellant.

(1)   Plaintiff's instruction number one is fatally defective.   (a)  It is fatally defective because it instructed a verdict against the defendant, who is not charged with negligence, but whose liability is sought to be established solely through the allegation and proof that it is the owner of a certain railroad right of way, which it had leased to another railroad company, whose negligence is alleged to have caused the injury, without requiring the jury to find that the defendant ever owned the lands or tracks or right of way where the injury occurred, or that it had leased the same to the Chicago & Alton Railway Company. The answer is a general denial.   There is no admission in the record that defendant ever owned the land or tracks where the injury occurred, and yet this essential element to the recovery is wholly eliminated from this mandatory instruction for plaintiff.   Such an omission constitutes reversible error.   Jackson v. Bowles, 67 Mo. 609; Crews v. Lockland, 67 Mo. 619; Greer v. Parker, 85 Mo. 111; Birtwhistle v. Woodward, 95 Mo. 113; Morris v. Railroad, 99 Mo. App. 455.   (b)  It is defective in grounding plaintiff's right to recover upon the fact that Fredericks drew the pin when he "at the time knew, or by the exercise of ordinary care and caution would have known that plaintiff was (merely) in a position of peril between said cars in the act of endeavoring to uncouple the same." It omits the essential element that Fredericks knew, or by the exercise of reasonable care would have known that the drawing of the lever and the separation of

the cars would cause Brady's fall, or that it would cause any injury to Brady, or that it would in any way increase his peril. Everybody knows that it is dangerous to attempt to stand between cars on a brake-beam while they are in motion. This instruction does not concede to Fredericks that essential requisite of negligent conduct under the circumstances now being considered, namely, that he knew, or as a reasonably careful person should have known, that his act in raising the coupling pin would increase the danger of the position that Brady occupied in being between the cars in the act of attempting to uncouple them. Wojtylak v. Coal Co., 188 Mo. 281. (c) It is fatally defective in declaring that if the "witness Fredericks carelessly and negligently drew the coupling pin connecting the said cars, allowing the cars to part, thus causing Mr. Brady, the plaintiff, to fall," etc., a verdict in the absence of contributory negligence or assumption of the risk must be for the plaintiff. Who is the witness Fredericks? Is he the defendant? Why should defendant be held liable because forsooth one Fredericks may have been negligent? There is no showing in this record that will warrant the court in asserting it to be a conceded fact that Fredericks at the time of the injury was in the employ of the Chicago & Alton Railway Company. The trial court in assuming such a material fact—an absolutely essential fact to recovery in this action—at the request of the plaintiff has been led into reversible error. An instruction which assumes the truth of controverted facts is uniformly held erroneous in this jurisdiction. Brown v. Railroad, 80 Mo. 457; Comer v. Taylor, 82 Mo. 347; Fullerton v. Fordyce, 121 Mo. 13. (d) This instruction is erroneous in submitting to the jury to find as a condition of the alleged negligence "that plaintiff was required in the course of his employment to go

206 Sup—33

between the cars mentioned in evidence in the yards of the defendant for the purpose of uncoupling the same,'' etc. There is no evidence upon which to submit this charge that plaintiff was "required in the course of his employment to go between the cars." (2) Plaintiff's instruction 2 asserts that "he (the plaintiff) did not assume the risks, if there were any such, arising from the negligence of said company (the Chicago & Alton Railway Company), or the said witness Fredericks." This instruction is erroneous in that it assumes there is such a relation between Fredericks and the defendant, Kansas City, St. Louis & Chicago Railroad Company, that the defendant is liable for Fredericks' acts. Again we ask, who is Fredericks? What right has the court to assume, without further ado, that Fredericks and defendant, so far as the defendant's legal liability is concerned, are one? Is it anywhere admitted that Fredericks is in the employ of the defendant? Or that he is in the employ of the Chicago & Alton Railroad Company, or the Chicago & Alton Railway Company? Upon plaintiff's theory of this case it devolved upon the plaintiff to prove and to establish by the evidence and to the satisfaction of the jury (1) that Fredericks was the agent for the Chicago & Alton Railway Company; (2) that the Chicago & Alton Railway Company was the lessee of defendant, and (3) that the defendant owned the right of way at the place where the injury occurred. (3) Upon the undisputed facts there was no causal negligence on the part of Fredericks. Railroad v. Schumacher, 152 U. S. 77; Young v. Railroad, 42 W. Va. 112; Gilbert v. Railroad, 128 Fed. 528; Mathis v. Stock Yards Co., 185 Mo. 434; Jackson v. Railroad, 104 Mo. 457; Williams v. Railroad, 119 Mo. 322; Francis v. Railroad, 127 Mo. 658; Railroad v. Smith, 82 Ga. 236. (4) Upon the undisputable facts plaintiff's negligence was a contributing cause to his injury. (a) This act of his,

of going between the moving cars for the purpose of uncoupling, when there was a perfectly working lever on the other side which could have been worked by himself and was safely worked by another employee, shows a heedless and reckless disregard of his own safety. Moore v. Railroad, 146 Mo. 582; Morris v. Railroad, 108 Fed. 747. Nor is plaintiff to be excused on the ground that he did not want to take the time to go around or over the car, or to call to coemployees to aid in the task. Smith v. Box Co., 193 Mo. 715; Gilbert v. Railroad, 128 Fed. 528. (b) If it be true, and plaintiff says it is, that he was standing firmly upon the brake-beam and was holding to a handhold (no assertion being made that these appliances were defective or unusual), and was in the act of drawing the coupling pin so that the cars would be separated while his back leaned against the opposite car, and the separation of the cars caused him to fall, he was negligent in relying upon that car to support him although the separation may have been caused by the act of another member of the crew with whom he was working. He was negligent in relying upon that car to support him from falling under those circumstances. Young v. Railroad, 42 W. Va. 112; Railroad v. Fox, 20 Ky. 81; Railroad v. Schumacher, 152 U. S. 77. (5) Section 1060, Revised Statutes 1899, is unconstitutional and void in that it denies to defendant the equal protection of the law, and deprives defendant of its property without due process of law, contrary to the Fourteenth Amendment to the Constitution of the United States. And it violates sections four, ten, fifteen and thirty of article two of the Constitution of Missouri. It is clear from the reading of this statute imposing a liability upon the lessor domestic company for the negligent act of its lessee or contractee that it applies only when such lessee or contractee is a foreign cor-

poration and not a domestic corporation; in other words, that a domestic corporation is exempt from its terms. And there are no words in this law which impose a like obligation upon domestic corporations as lessees. It is equally clear too that it applies only to the immediate lessee or contractee.

*Walsh & Morrison* for respondent.

(1) Plaintiff's first instruction is not defective. (a) The answer admits the ownership of the road and that the switching crew and men in charge of the yards were in the employ of the Chicago & Alton Railway Company. Defendant's instructions concede the leasing of the right of way. Markey v. Railroad, 185 Mo. 363; Parks v. Railroad, 178 Mo. 120; Bertram v. Railroad, 154 Mo. 654; State ex rel. v. Branch, 151 Mo. 636; Bank v. Hatch, 98 Mo. 378; Farber v. Railroad, 139 Mo. 272; Anderson v. Bradford, 102 Mo. App. 433; Sweeney v. Railroad, 150 Mo. 402; Henderson v. Kansas City, 177 Mo. 490; Barr v. Armstrong, 56 Mo. 589. (b) The requirement in said instruction to find that Fredericks "knew, or by the exercise of ordinary care and caution would have known, that plaintiff was in a position of peril between said cars in the act of endeavoring to uncouple the same," is sufficiently explicit as referring the jury to the peril from Fredericks' act. Instructions are to be construed in reference to the evidence before the jury, and need not be framed so as to exclude contingencies and exceptions not in evidence. Montgomery v. Railroad, 181 Mo. 489; Russell v. Ins. Co., 55 Mo. 594; Moore v. Railroad, 73 Mo. 440; Miller v. Railroad (Mo. App.), 102 S. W. 592; Berry v. Hardmon, 12 Ala. 607; Hale v. Darter, 29 Tenn. (10 Hump.) 95; Waters v. Spencer, 22 Ala. 468; Adams v. State, 22 Ga. 425; Roots v. Tyner, 10 Ind. 90; Bank v. Keene, 53 Me. 103; Lyman v. Redmon, 23 Me. 289; Gerrish v. New Markey Co., 30 N. H. (10

Fost.) 484; Davis v. Loftin, 6 Tex. 489; Railroad v. Thomas, 92 Va. 612. The instruction being good as far as it goes and not misleading, if defendant thought it too general it was its duty to ask a more explicit instruction, failing which it cannot complain. Montgomery v. Railroad, 181 Mo. 489; Brown v. Railroad, 13 Mo. App. 466; State ex rel. v. Donnelly, 9 Mo. App. 532; State ex rel. v. Branch, 151 Mo. 636; Hughlett v. Lumber Co., 53 Mo. App. 94. But if the instruction is construed as defendant contends, still it is sufficient under the rule laid down in Smith v. Railroad, L. R. 6 C. P. 20, quoted and followed in Hoepper v. Southern Hotel Co., 142 Mo. 389; Harrison v. K. C. Elec. Lt. Co., 195 Mo. 629. (2) Plaintiff's second instruction is not erroneous. (a) Fredericks' employment by the Chicago & Alton Railway Company is admitted by the answer and conceded by the defendant's evidence. (b) It correctly states the law on assumption of risk. Curtis v. McNair, 173 Mo. 280; Settle v. Railroad, 127 Mo. 342; Pauck v. St. L. D. B. & P. Co., 159 Mo. 476; Dean v. Railroad, 199 Mo. 410; Charlton v. Railroad, 200 Mo. 433. Even if this instruction had been erroneous, it would be harmless error because there is no evidence of assumption of risk in this case. (3) Plaintiff's third instruction is not erroneous. Hartman v. Railroad, 39 Mo. App. 104; Stewart v. Sparkman, 75 Mo. App. 106; State v. Knowles, 185 Mo. 173; 11 Enc. Pl. and Pr., 189. (4) Fredericks' act in cutting the cars was negligent. That his negligence was the proximate cause of injury, see: Newcomb v. Railroad, 169 Mo. 422; Bassett v. St. Joseph, 53 Mo. 290; Brennan v. St. Louis, 92 Mo. 482; Harrison v. Elec. Lt. Co., 195 Mo. 622; Smith v. Fordyce, 190 Mo. 21; Campbell v. Transfer Co. (Minn.), 104 N. W. 547; Meade v. Railroad, 68 Mo. App. 101; Ray v. Railroad, 88 S. W. 469. (5) Plaintiff was not guilty of contributory negli-

gence.   Black v. Railroad, 172 Mo. 188; Edington v. Railroad, 102 S. W. 493; Murphy v. Railroad, 115 Mo. 125; Curtis v. McNair, 173 Mo. 292; Pierson v. Railroad, 127 Iowa 13; Brinkmeier v. Railroad, 69 Kan. 738; Railroad v. Mooney, 40 Fla. 32; Gibson v. Railroad, 107 Iowa 596; Kennedy v. Railroad, 190 Mo. 442; Francis v. Railroad, 110 Mo. 397; Spaulding v. Railroad, 98 Iowa 212; Ribb v. Railroad, 87 Ga. 631; Ashman v. Railroad, 90 Mich. 547. (6) Section 1060, Revised Statutes 1899, is constitutional. Dean v. Railroad, 199 Mo. 390. The question is not in any event properly before this court. Hulett v. Railroad, 145 Mo. 35; Harding v. Illinois, 196 U. S. 77; Farney v. Towle, 1 Black 350.

## IN DIVISION TWO.

BURGESS, J.—This is an action to recover damages for personal injuries sustained by plaintiff on October 14, 1902, while engaged in the performance of his duties as switchman for the Chicago & Alton Railway Company. Plaintiff recovered judgment for $15,000, from which judgment, after unavailing motions for new trial and in arrest, defendant appealed.

The petition alleges the incorporation of the defendant company under the laws of the State of Missouri, and its ownership of a line of railroad in Kansas City, Missouri, and elsewhere, together with switches and yards, and that by intermediate conveyances defendant leased the same to the Chicago & Alton Railway Company, a corporation organized under the laws of the State of Illinois. That on October 14, 1902, plaintiff was employed by the Chicago & Alton Railway Company as a switchman in and about the yards belonging to defendant in Kansas City, Missouri, in a switching crew composed of one known

as William Fredericks, real name unknown, as foreman, one Bankston and the plaintiff, all being under a night yardmaster named Ed. Medley. The petition then states that in due course of his employment, plaintiff was required to go between and upon certain cars belonging to the Chicago & Alton Railway Company then being switched in said yards and upon the tracks belonging to defendant, and while plaintiff was so engaged, the said Fredericks, in the due course of his employment and acting under the direction of said Medley, "carelessly and negligently drew a certain coupling pin which was connecting the said cars between which plaintiff was situated, as aforesaid, causing the said cars to separate suddenly and precipitate plaintiff to the track below, so that he was caught and run over by one of the said cars, causing him severe and permanent injuries."

The allegations of negligence are as follows:

"1.   That said Medley carelessly, negligently and unskillfully ordered and directed said Fredericks to draw said coupling pin when Medley knew, or by the exercise of reasonable care might have known, that plaintiff was in a position of peril between said cars and liable to be thrown therefrom to the track below if said coupling pin was drawn; and,

"2.   That the defendant and the said Chicago & Alton Railway Company and their agents, servants and vice-principals belonging to said switching crew and in charge of said yards negligently and carelessly failed and neglected to warn the plaintiff of the peril to which he was exposed by reason of the attempted uncoupling of said cars by said Fredericks and although they knew, or by the exercise of reasonable care and skill might have known, that plaintiff was in said position of danger; and,

"3.   That the said Wm. Fredericks, whose real
name is unknown to this plaintiff, carelessly, negli-
gently and unskillfully drew said coupling pin when he
knew, or by the exercise of ordinary care and skill
might have known, that plaintiff was in a position of
peril between said cars and liable to be thrown to the
track below by the uncoupling of said cars and thereby
crippled and injured."

That by reason of the foregoing carelessness and
negligence plaintiff was run over by the wheels of
the cars and his left leg crushed so that it was nec-
essary to amputate it about four inches below  the
knee; that plaintiff has suffered and will continue to
suffer in the future great pain and anguish of mind
and body, and has lost and will continue to lose his
natural rest and sleep, and will be forever crippled
and deformed; that prior to said injuries plaintiff
was a strong, healthy, vigorous man, earning one hun-
dred and ten dollars per month as a switchman, but
by reason of said injuries he has lost and will con-
tinue to lose all his time and earnings, and his earning
capacity has been entirely destroyed and he has become
obligated for one hundred dollars for medicine, treat-
ment and appliances and will in the future become ob-
ligated for the further sum of five hundred dollars, all
to his damage in the sum of twenty thousand dollars
for which judgment was prayed.

Defendant answered, admitting plaintiff's employ-
ment as a switchman for the Chicago & Alton Railway
Company, and denying generally all other allegations
in the petition.

Further answering, defendant averred "that the
switch engine with which plaintiff was working at the
time of the injury was owned, used and controlled
exclusively by the said Chicago & Alton Railway Com-
pany; that the said switch yards and tracks were in
the exclusive and absolute control of the said Chicago

& Alton Railway Company; that the employees, servants and vice-principals, composing the crew and in charge of said yards, were exclusively in the employ of, and subject to the direction and control of said Chicago & Alton Railway Company; that the only duty which *this defendant* owed to the public and the plaintiff were its charter duties imposed on it by law, and were and are restricted to the maintenance in proper condition for use of *its said roadbed and right of way* and to the exercise of reasonable and due care and diligence in the operation of such trains only as are used, controlled, and operated by this defendant; and that it is not liable to the plaintiff nor to the public for the negligence, if any, of the said Chicago & Alton Railway Company in the operation of its engines or switch yards; nor had this defendant any contract or any other relations whatever with this plaintiff as such switchman.''

Defendant further pleaded that section 1060, Revised Statutes 1899, is unconstitutional and void in that it denies defendant equal protection of the law and assumed to give plaintiff a cause of action against defendant without due process of law and attempts to impose upon defendant the obligation of another without defendant's consent and thereby violates sections 4, 10, 15 and 30 of article II, and section 13 of article IV, of the Constitution of Missouri, and the Fourteenth Amendment to the Constitution of the United States.

The answer further alleged contributory negligence on the part of plaintiff in that he carelessly and negligently went in between two cars that were in motion and placed himself in a position of peril and failed to exercise reasonable care for his own protection while in such position; and that plaintiff placed himself in such position of peril unnecessarily and in violation of his duty and in total disregard of his instruc-

tions and otherwise carelessly and negligently conducted himself in the premises.

Finally defendant pleaded that the risk of being so injured was one of the usual and ordinary risks of plaintiff's employment and was assumed by him, and concluded with a prayer for judgment.

Plaintiff was a switchman of fourteen years' experience, and at the time of receiving the injury he was one of a switch crew of four, consisting of Medley, the night yardmaster, Fredericks, the foreman of the crew, Bankston and himself, all of whom were in the employ of the Chicago & Alton Railway Company in the yards in Kansas City leased by said company from the defendant. The injury occurred about eight o'clock at night. It was dark at the time, and the switch-crew were in the act of detaching two cars from a train of three or four freight cars then being pushed northwardly by an engine moving at the rate of about five miles an hour. The car to be uncoupled was equipped with two levers, one on either side, with which to draw a coupling pin. As the cars passed Medley, the yardmaster, he tried to uncouple the car by means of the lever on the east side, but it did not work, the chain having been broken, and he hollowed down the line the order to "cut it on the other side." Fredericks, who was stationed ahead or in front of the moving cars, said, "All right; let it come." He then ran around in front of the cars to the west side, and from that side worked the lever which drew the coupling pin. In the meantime Brady, who remained on the east side of the track, of his own volition, and without any order from the foreman, went between the cars, got upon the brake-beam, and while holding to the handhold on the end of the car, with his back against the car behind him, attempted to draw the coupling pin with his free hand at the same time or instant that Fredericks used the lever on the other side. The cars part-

ed and plaintiff fell, his left foot being caught and crushed under the wheels of the moving car. At the time Medley gave the order to "cut it on the other side" Brady was in a position nearer to him than was Fredericks, but Brady testified that he did not hear such order, and that when he saw that the lever did not work on his side he went between the cars to uncouple them by hand, which he said was the usual thing to do under such circumstances. Fredericks testified that he did not know where the plaintiff was at the time he went around to uncouple this car, nor at the time he manipulated the lever. Just after he pulled the lever he heard Brady's lamp rattle and saw him under the cars, and that was the first intimation he had that Brady was there. Fredericks also testified that it was the practice in the C. & A. yards for the switchmen to step on the brake-beam on the engineer's side and pull the coupling pin when the lever was out of order; that this was the practice in all yards, and that the men always work on the engineer's side unless they get a special order to cross over.

Plaintiff's testimony was, in substance, that Medley gave an order to come ahead, and that when he, plaintiff, discovered that the lever would not work he went between the cars to uncouple them "the same as we always did;" that he was on the brake-beam, holding to the handhold, his back resting against the car behind him, and when in the act of pulling the pin he saw Fredericks grab the lever on the fireman's side; that the cars parted before he expected it, and being unable to hold himself up by means of the handhold, which he said was in a low position, he fell. He knew that it was dangerous to go between the cars to uncouple them while in motion, but said that it was perfectly safe where he was, providing the car had not been cut from the other side, and he thought he could safely go in there. The cars could have been cut from

the other side by going around them or by climbing over the cars to the other side, but he and all the switchmen work on the engineer's side, and did not work on the fireman's side unless given a special order to do so. He was following the engine, and it was his duty to cut or uncouple the cars. He did not hear Medley give the order to Fredericks to "cut it on the other side," and did not know how Fredericks happened to go around to do that. Plaintiff had worked for the Chicago & Alton in 1898. He identified the application made by him for work at that time, which was signed and sworn to by him. In this application was the statement that he had received and read a copy of the rules, and that he agreed to be governed by them, but he said that he never, in fact, had received a copy of the rules and never had read them. One of the questions in the application for employment was: "Do you fully understand that it is against the rules of the Chicago & Alton Railway Company to walk between moving cars or step upon or about switch rails, frogs and crossings while the trains or engines are moving near them?" The answer was, "Yes." Rule 5, concerning which plaintiff in the application had said, "I agree to be governed and bound by them," provided: "Jumping on or off trains or engines in motion, getting between cars in motion to uncouple them, and all similar imprudences are dangerous and in violation of duty. All employees are warned that if they commit them it will be at their own peril and risk." Plaintiff quit working for the C. & A. in 1899, and when he applied for work this time he said that Mr. Medley put him to work without getting him to sign an application or furnishing him a copy of the rules, and that he did not know what the rules were at that time.

James Walters, who was yardmaster for the C. & A. Railroad in 1898, at Kansas City, and Dennis Ma-

honey, who was car inspector for said company at the time Brady was injured, both testified to the effect that switchmen always worked on the east or engineer's side, and that it was the custom for switchmen, when the lever for raising the pin does not work, to step upon the brake-beam and lift the pin by hand. Walters said that while he was yardmaster there he did not know of this being done in any other way. He also stated that the men down there were not furnished with time-tables or the book of rules in his time.

J. E. Medley testified that he was yardmaster for the C. & A. the night that plaintiff was hurt, and that it was customary for switchmen to go in on the brake-beam to cut off cars, where the lever did not work, and that Mr. Ruggles, the general yardmaster, was around the yard when that was being done. He was shown a statement made by him on April 16, 1903, and after reading it over he said that it was true. Part of the statement is as follows: "Brady saw me try the lever, and he then went in on the brake-beam to cut it off. He probably was in on the beam when I called to Fredericks. I don't know that he was not. It is customary in the C. & A. yards and in every yard to go in on the brake-beam to cut off cars where the lever don't work. Ruggles, the general yardmaster, was often down there while men were going in between moving cars to cut them off."

Plaintiff introduced in evidence lease entered into on March 15, 1878, by the Kansas City, St. Louis & Chicago Railroad Company, the defendant, to the Chicago & Alton Railroad Company, lessee, and a second lease, dated October 3, 1900, between the Chicago & Alton Railroad Company as lessor and the Chicago & Alton Railway Company as lessee, both of which leases covered all the property, yards and right of way of the Kansas City, St. Louis & Chicago Railroad Company; also deed record, duly identified, contain-

ing the deed to the land in question, dated October 26, 1879, from the Kansas City, Fort Scott & Gulf Railroad Company to the Kansas City, St. Louis & Chicago Railroad Company; also plat of the land showing location of tracks in the vicinity of the accident.

At the close of plaintiff's evidence defendant asked for an instruction in the nature of a demurrer thereto, which was refused by the court, and defendant excepted.

Defendant contends that there is no evidence disclosed by the record tending to show that the defendant owned the land upon which plaintiff's injury occurred; that it is not alleged in the petition nor shown by the evidence that the engine and cars were owned by the defendant, or that the persons whose alleged negligence caused the injury were in the employ of the defendant, and that for these reasons plaintiff failed to make a case.

We think there was substantial evidence tending to show that the defendant owned the land where the injury occurred; besides, the answer tacitly admits such to be the case. The petition alleges that plaintiff at the time of the accident was employed "in and about said switches and yards belonging to the defendant herein," and that in the due course of his employment, plaintiff was required to go between and upon certain cars belonging to the said Chicago & Alton Railway Company, then being switched in said yards and being upon the said tracks hereinbefore referred to and the property of the defendant herein. The answer alleges, "That the only duties which this defendant owed to the public and the plaintiff were its charter duties imposed on it by law, and were and are restricted to the maintenance in proper condition for use of *its said roadbed and right of way*," etc., the defendant thus admitting that it was the owner of the

road and right of way. But, in any event, the petition is good after verdict. [Sec. 672, R. S. 1899.]

There was not, we think, an entire failure of evidence; upon the contrary, there was substantial evidence to take the case to the jury.

It is also insisted by defendant that, according to the evidence, the injury was a mere accident or the result of the hazards to which the plaintiff was exposed in his usual employment, and that there can be no recovery because no causal negligence of defendant's representatives is shown.

It is well settled that the servant, when he enters the employment of his master, assumes not only the risks incident to his employment, but all dangers which are apparent and obvious as a result thereof, and that the master is no insurer against all accidents that may overtake or befall the servant in his employ. [Nugent v. Milling Co., 131 Mo. 241.] And, "if the servant, before he enters the service, knows, or if he afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill and diligence in his department of service, he may discover, that the building, premises, machine, appliance or fellow-servant in connection with which or with whom he is to labor, is unsafe or unfit in any particular, and, if, notwithstanding such knowledge or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to waive any claim for damages against the master in case it shall result in injury to him." [2 Thompson on Neg., 1008; Watson v. K. & T. Coal Company, 52 Mo. App. l. c. 370; Mathias v. Stock Yards Co., 185 Mo. l. c. 434.]

Assumption of risk and contributory negligence are so closely allied that it is often very difficult to draw the line of demarcation between them. There is

always danger to the brakeman in uncoupling cars while in motion. Therefore, if plaintiff, in uncoupling the cars, accidentally, and without negligence, fell and was injured, his injury could only be attributed to one of the ordinary risks of his employment, which risk he accepted, and the defendant cannot be held to respond in damages on account of said injury. But, while the servant assumes all ordinary risks incident to his employment, he does not assume extraordinary risks or such as are occasioned by the carelessness or negligence of the master [4 Thompson's Com. on the Law of Neg. (2 Ed.), sec. 4614]. And the authorities all hold that if the negligence of the master or his representative was the proximate or effective cause of the injury, then the master will be held liable.

The evidence upon the part of the plaintiff tended to show that it was plaintiff's duty, as the man who was following the engine, to cut off or uncouple the cars. Fredericks knew, and he so testified, that it was the custom for the switchmen to work on the engineer's side, unless there was a special order to cross over and cut a car off on the other side. He also knew that it was the custom of the switchmen to go on the brake-beam and cut the cars when the lever failed to work. He was Brady's foreman, the vice-principal of the railway company, and charged with the responsibilities belonging to that position, and it was, therefore, his duty to know where Brady was and what he was doing at the time being; yet, according to his own testimony, when he went round to cut the cars he did not know where plaintiff was. In order to cut the car off he had to reach around its end and grasp the lever which was from six to eight inches inside the end or edge of the car, and could, had he looked, have seen the plaintiff standing on the brake-beam with a lighted lantern. Fredericks further testified that the last time he saw plaintiff before the accident he observed no

movement on plaintiff's part that would indicate that he was going in between the cars; that he did not know that he intended to do that or had done it, and that he certainly would not have cut the cars if he had. Plaintiff had the right to use the customary method of uncoupling the cars when the lever was out of order. He was reaching for the lock pin, which would seem to indicate that he was not expecting any one else to uncouple the cars. He was standing on the brakebeam, with his lantern on his arm, his back against the car behind him, and his hand on the handhold provided by defendant for that purpose, and, whether, under the circumstances disclosed by the record, plaintiff assumed the risk or Fredericks should have anticipated the manner of the injury, was a question to be passed upon by the jury and not one of law to be determined by this court.

Defendant insists that plaintiff is not entitled to recover because, upon his own showing, he was guilty of negligence which directly contributed to his injury.

Plaintiff testified in his own behalf as follows:

"Q. Now, if instead of going in between these cars you had gone around to the other side, or had gone over there, you could have uncoupled the car from the other side without going between them, couldn't you? A. Yes, sir; but we work altogether on the engineer's side.

"Q. That is a rule when everything is in order? A. Yes, sir.

"Q. But when it is not, then there is a coupling provided on the opposite side, isn't there? A. Yes, sir.

"Q. And you could reach that by going around those other two cars? A. Yes.

"Q. The question was, you could have uncoupled

the car without going between, by going around on the opposite side? A. Yes, sir.

"Q. Now, you knew that it was dangerous to go between the cars when in motion, didn't you, Mr. Brady? A. Yes, sir."

It is contended that the act of plaintiff in going in between the moving cars for the purpose of uncoupling them, when, by going to the other side, he could have uncoupled them by means of a device provided for that purpose, and without getting between the cars or in a place of danger, convicts him of negligence in selecting the dangerous way when a safer one was at hand.

In Moore v. Railroad, 146 Mo. l. c. 582, there is quoted with approval the following from Bailey on Personal Injuries, vol. 1, sec. 1121: "It is a familiar principle, which common sense as well as the rules of law ought to teach one, that where an employee of a railroad knowingly selects a dangerous way when a safer one is apparent to him, and is thereby injured, he is guilty of contributory negligence."

Again, from section 1123: "Where a person having a choice of two ways, one of which is perfectly safe and the other of which is subject to risks and dangers, voluntarily chooses the latter, and is injured, he is guilty of contributory negligence, and cannot recover." [Hurst v. Railroad, 163 Mo. 309.] The same rule is announced in Morris v. Railroad, 108 Fed. 747, and authorities cited; Weber v. Railroad, 100 Mo. 194; Smith v. Forrester-Nace Box Co., 193 Mo. 715, and many other cases.

Upon this identical question, however, the court, at the instance of defendant, instructed the jury as follows:

"The court instructs the jury that if the plaintiff Brady had the choice of two ways for uncoupling the cars, one of which was safe and the other unsafe, and

that he chose the unsafe way, and was injured in consequence, then he cannot recover in this action.''

In view of this instruction, the only inference to be drawn from the verdict of the jury is that they believed the way chosen by plaintiff for uncoupling the cars was not more dangerous than the other; otherwise, the verdict must have been for the defendant.

Moreover, the evidence in behalf of plaintiff tended to show that it was the custom of switchmen, not only in this but in all other yards where cars were switched, to go in on the brake-beam and pull the pin by hand when the lever did not work; and for that purpose a handhold was provided for the safety of the men going in to do this work. Plaintiff testified that the cars were moving at a speed of no more than five miles an hour. Even if he knew of the rule prohibiting switchmen from going in between cars to couple or uncouple them while in motion, the established custom in the yards of going upon the brake-beam under circumstances such as these existed with the tacit approval and acquiescence of the railway company's officers, and such acquiescence must be regarded as a recognition on the part of the officers of the propriety of the act. The work was done in the C. & A. yards strictly on the engineer's side, and plaintiff testified that they never worked on the fireman's side at all. In this he was supported by the testimony of other witnesses. Plaintiff further testified that the man who is following the engine, or the engine's switchman, cuts off all the cars no matter how long the string of cars. As this was his work, it was his duty to cut the cars as he did, in the usual course of business as done in these yards, provided he received no order to the contrary. He testified that he did not hear the command of Medley to ''cut it on the other side.'' It was in evidence that Medley was giving a go-ahead signal, and plaintiff testified that Medley was up by the engine where

the engineer could see that the yardmaster was signaling, and that under such circumstances if he, plaintiff, had given a stop signal it would not have been taken by the engineer, the yardmaster being superior in authority. Plaintiff also testified that he was perfectly safe where he was, provided the car had not been cut from the other side.

As sustaining his contention upon this point, plaintiff cites the case of Black v. Railroad, 172 Mo. 188, as holding that when the question is submitted to the jury at defendant's request, and the finding of the jury is for the plaintiff, it is conclusively presumed that the course pursued was not more dangerous than the other. While this is practically the result of what was held in that case, the terms employed are somewhat inapt and incorrect. What we did intend to say was, that the burden was upon defendant to show that plaintiff was guilty of contributory negligence in adopting the method he did to uncouple the cars, and that, in order to do this, it devolved upon the defendant to show by a preponderance of the evidence that there were two ways to uncouple the cars, one safe and the other unsafe, and that plaintiff *knowingly* chose the unsafe way, and that the verdict of the jury was conclusive upon the defendant that plaintiff did not knowingly take the unsafe way.

In Murphy v. Railroad, 115 Mo. 111, the plaintiff, a railroad engineer, was injured by being struck by a cattle-guard near the side of the track, while he was outside the line of the engine and tender, trying to tighten a bolt. BLACK, P. J., speaking for the court, said: "There is much evidence to the effect that he could have whistled out flagmen and stopped his train; but because this way was open to him it does not follow that he was, as a matter of law, guilty of contributory negligence. It does appear that other engineers would not have attempted to tighten the nut as he did, but

their evidence also tends to show that they would have pursued some other course, not because of any danger in standing on the outside step of the tender, but because of their build they could not have tightened it except by stopping the train. The plaintiff being a young and active man, it cannot be said as a matter of law that he was guilty of negligence in doing as he did. Had he known that this fence was close enough to the rail to strike him, then there would have been no excuse on his part for taking the position that he did just before passing the crossing; but the trial court could not, nor can this court, say he had such knowledge.''

In Curtis v. McNair, 173 Mo. 270, the plaintiff was injured by a blow-out from a furnace. An instruction was asked by defendant to the effect that if plaintiff knowingly selected a dangerous route in front of the furnace, when he could have gone around it in perfect safety, then he could not recover. The trial court modified the instruction so as to read, ''by another route not materially more inconvenient,'' which modification was complained of by the defendant. This court, speaking through VALLIANT, J., said: ''Of course, if the man had not gone the way he did and at the time he did, he would not have been in front of the notch where the blow-out came, and would not have been hurt. But he was where his business called him, and going the way that was the shortest and most convenient, and the usual way.''

Similar questions were presented in the case of Pierson v. Railroad, 127 Iowa 13. In that case the plaintiff, a brakeman, was attempting to uncouple two cars which were being kicked upon a side track. The cars were supplied with safety couplers, but the lever failed to work, and plaintiff had the cars stopped and then put in slow motion, and he went in between the rails, walking with the cars and attempting to pull the lever by hand. His foot caught in a defectively

blocked guard rail and was run over by the cars and
crushed.   Plaintiff obtained judgment in the lower
court, and defendant appealed.   There was evidence to
the effect that he might have gone around the engine,
or stopped the cars and crawled under, and thus been
able to use the lever on the other side.   It was a conced-
ed fact that the use of the automatic couplers required
the cars to be in motion to be uncoupled.   The defend-
ant cited Morris v. Railroad, 108 Fed. 747, and Gilbert
v. Railroad, 128 Fed. 529, but the court refused to
follow them, and held the whole question was for the
jury, saying in an opinion by Judge McCLAIN: "We
think that, under the decisions of our own court, the
question whether, when Harrington found that the
safety appliance immediately available to him would
not work, he acted as a reasonably prudent man, under
the circumstances, in attempting to make the uncoup-
ling by stepping between the rails after the engine was
in motion, rather than incur the additional delay neces-
sary to reach the other side of the train, and try to ef-
fect the uncoupling by the appliance on the freight car,
was for the jury. . . .   It was properly left to the
jury in this case to say, not simply whether it would
have been safer for Harrington to crawl under the
coupling, or go around ahead of the engine to the other
side of the train, and attempt to uncouple the car by
means of the safety appliance, than to attempt to un-
couple it by hand, as he did, but whether, under all the
circumstances, in view of the necessity for prompt
action, which is involved in the railway service, he was
negligent in adopting the method which he did adopt,
even though another might have been safer.   [Bucklew
v. Railroad, 64 Iowa 603; Gibson v. Railroad, 107 Iowa
596; Curtis v. Railroad, 95 Wis. 460; Ashman v. Rail-
road, 90 Mich. 567; Railroad v. Mooney, 40 Fla. 17.]"
To the same effect are Kennedy v. Railroad, 190 Mo.
424, and Brinkmeier v. Railroad, 69 Kan. 738.

Our conclusion is that the questions of contributory negligence, and as to whether plaintiff had choice of two ways, one safe and the other unsafe, and chose the latter, were for the consideration of the jury.

Instructions 1, 2 and 3, given for the plaintiff, are challenged upon various grounds. They are as follows:

"1. The court instructs the jury that, if you believe and find from the evidence that on or about the 14th day of October, 1902, plaintiff was required in the course of his employment to go between the cars mentioned in evidence in the yards of the defendant for the purpose of uncoupling the same and while between said cars and in the act of uncoupling the same and while said cars were in motion the witness Fredericks carelessly and negligently drew the coupling pin connecting said cars, allowing the said cars to part, thus causing Mr. Brady, the plaintiff, to fall upon the track between said cars; that said Fredericks at the time knew, or by the exercise of ordinary care and caution would have known, that plaintiff was in a position of peril between said cars in the act of endeavoring to uncouple the same; that on account thereof the wheels of said cars were caused to run upon and over the body of plaintiff, mashing and crushing his leg, then your verdict must be for the plaintiff, unless you further believe and find from the evidence that the plaintiff was guilty of contributory negligence, or that he assumed the risk of being so injured, as defined by the other instructions.

"2. The court instructs the jury that the plaintiff Brady, in entering upon and continuing in the employment of the said Chicago & Alton Railway Company as a switchman, assumed all the risks ordinarily incident to the work he was called upon to perform, but he did not assume the risks, if there were any such, arising from the negligence of said company or the said witness Fredericks.

"3. The jury are instructed that even though they should believe and find from the evidence that at the time of the injury to Mr. Brady, the Chicago & Alton Railway Company had established the rule known as 'Rule V,' introduced in evidence, and that plaintiff had knowledge of said rule, yet, if you further believe and find from the evidence that there was an established usage and custom on the part of the defendant's switchmen, at and prior to the injury to Mr. Brady, to go between moving cars for the purpose of uncoupling same when the chains upon said coupling were broken so that the pins could not be pulled with the lever and that said established usage and custom aforesaid, if any, was known and acquiesced in by the superior officers of the Chicago & Alton Railway Company, then plaintiff Brady cannot be held guilty of contributory negligence solely on the ground that he violated said rule."

The objection urged against instruction numbered 1 is that it instructed a verdict against the defendant, who is not charged with negligence, without requiring the jury to find that the defendant ever owned the land or tracks or right of way where the injury occurred, or that it had leased the same to the Chicago & Alton Railway Company.

We have already ruled that both the ownership and leasing of said property are practically admitted by defendant's answer. As to the question of leasing, the eighth instruction asked by defendant was that section 1060, Revised Statutes 1899, "does not contemplate or mean that the defendant company as a lessor shall be and remain liable to the employees of the Chicago & Alton Railway Company for any injuries caused by the negligence of the sublessee, the Chicago & Alton Railway Company, in operating its trains." In any event, the defects in the instruction complained of, even if error, could not have prejudiced the rights

of the defendant, and the judgment should not be reversed upon that ground.

A further objection urged against this instruction is that it grounds plaintiff's right to recover upon the fact that Fredericks drew the pin when he "at the time knew, or by the exercise of ordinary care and caution would have known, that plaintiff was in a position of peril between said cars in the act of endeavoring to uncouple the same," without requiring the jury to find that Fredericks knew, or by the exercise of ordinary care might have known, that his act would cause plaintiff to fall. But even if it did not so require, it is not necessary to plaintiff's recovery that defendant's agent, Fredericks, should have foreseen or anticipated the particular injury which resulted. It is sufficient, if the injury as it occurred was such as might have been foreseen and avoided by the exercise of reasonable prudence.

In the case of Dean v. Railroad, 199 Mo. l. c. 411, there is quoted, with approval, from Fishburn v. Railroad, 127 Iowa 483, the following: "The liability of a person charged with negligence does not depend on the question whether, with the exercise of reasonable prudence, he could or ought to have foreseen the very injury complained of; but he may be held liable for anything, which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission," citing Gilson v. Delaware C. Co., 65 Vt. 213, 26 Atl. 70, 36 Am. St. Rep. 810; Hill v. Winsor, 118 Mass. 251; Bunting v. Hogsett, 139 Pa. St. 363, 21 Atl. 31-33-34, 12 L. R. A. 268, 23 Am. St. Rep. 192; Higgins v. Dewey, 107 Mass. 494; Brown v. Railroad, 54 Wis. 342; Railroad v. Wood, 113 Ind. 544; Savage v. Railroad, 31 Minn. 419; Railroad v. Kellogg, 94 U. S. 475.

There are other criticisms upon this instruction, but seemingly without merit. The instruction, taken

in its entirety, is free from substantial error. The whole question, as to whether or not Fredericks' act in drawing the coupling pin, and thus causing the cars to separate, was negligence, was for the consideration of the jury.

It is claimed by defendant that plaintiff's instruction number 2 is erroneous in that it recites that plaintiff "assumed all the risks ordinarily incident to the work he was called upon to perform, but he did not assume the risks, *if there were any such,* arising from the negligence of said company or the said witness Fredericks." Defendant contends that this instruction assumes that the railroad company and Fredericks were negligent. We do not, however, so understand the instruction. The question of negligence on the part of Fredericks or the railroad company had already been submitted to the jury by plaintiff's first instruction, and the risks mentioned in said instruction numbered 2 were risks arising from the negligence of the railroad company or Fredericks, if there was any such. Instructions must be read together and with reference to each other. The jury could not have found that there were risks arising from the negligence of the company or Fredericks without also finding that there was such negligence.

In Dammann v. St. Louis, 152 Mo. 186, plaintiff therein sued for damages to his property which was alleged to have been damaged by a leak in a pipe of a water main, and objection was made to an instruction which required the jury to find if "such leak was directly caused by the negligent and unskillful laying of said pipe by the person in charge of said work," etc. It was claimed that the instruction assumed that the pipe was negligently and unskillfully laid, and only submitted the question of cause. But the court said: "The jury could not find that the leak was caused by

the negligent and unskillful laying of the pipe without finding that it was negligently and unskillfully laid.''

A somewhat similar question arose in Geary v. Railroad, 138 Mo. 251, in which BRACE, J., speaking for the court, said: ''The objection urged to instruction number 2, given for the plaintiff, is that 'it assumes that the wheel of the locomotive was cracked, dangerous and defective.' We do not so understand this instruction. What the court told the jury in this regard by the instruction was that 'if the jury find from the evidence that the defendant's engine was derailed by reason of the cracked, defective and dangerous condition of said wheel,' etc. How the jury was to find that the engine was derailed by reason of the cracked, defective and dangerous condition of the wheel, without finding that the wheel was in a cracked, defective and dangerous condition, we think would be past the understanding of the ordinary juryman, and would perhaps suggest itself only to the verbal critic who found it necessary to find some fault in the instruction, which in this instance was evidently not found by the learned counsel for the defendant until after the trial, for their own instructions contain a like assumption, if this be an assumption.''

The point must be ruled against the defendant.

Plaintiff's instruction numbered 3 is also claimed to be erroneous for the reason, as stated by defendant, that it assumes facts not in evidence, and is, therefore, not predicated on the evidence. We are unable to agree to this. The facts disclosed by the evidence, we think, fully warranted this instruction.

Error is assigned upon the refusal of the court to give defendant's instruction number 6, which reads as follows:

''The court instructs the jury that plaintiff's act in going between the cars while in motion was the proximate cause of his injury; and if it appears from the

evidence that his act in so doing directly contributed to his injury and that he would not have been injured but for such act, then he cannot recover in this action, and your verdict should be for the defendant.''

This instruction was properly refused because it told the jury that plaintiff's act in going between the cars, while in motion, was the proximate cause of his injury, when this was one of the vital issues in the case, and upon which there was a sharp conflict in the evidence. It in effect amounted to an instruction to find for the defendant. Besides, it is in direct conflict with plaintiff's first instruction.

The final contention is that the verdict is excessive. There is no settled rule by which courts are to be governed in estimating damages in cases of this character; so that damages in each case must depend upon and be considered in connection with the facts in relation to the injury, and the seriousness of its results. That plaintiff's injury in the loss of his foot and the lower part of his leg was a very serious one cannot be gainsaid. And, while the jury has large discretion as to the amount of damages it may allow in any particular case, this court has the power to pass upon the question of the excessiveness of the verdict. In this case the verdict seems to us to be excessive, and that the judgment should be reversed and the cause remanded on the ground of excessive damages, unless plaintiff will remit $5,000 thereof within ten days.

All concur.

## IN BANC.

PER CURIAM.—The foregoing opinion by BURGESS, J., in Division Two, is hereby approved and adopted as the opinion of this court.

All concur.